UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEVEN RAY NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:04-CV-0828-G |
| CAROLYN MYRICK, R.N. and LAKE | ) | |
| POINTE PARTNERS, LTD., d/b/a LAKE | ) | |
| POINTE MEDICAL CENTER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion for partial summary judgment of the defendants

Lake Pointe Partners, Ltd., d/b/a Lake Pointe Medical Center ("Lake Pointe"),[1] and

Carol Myrick ("Myrick")[2] (collectively, "the defendants" or "the movants") on the

claims asserted against them by the plaintiff, Steven Ray Nelson ("Nelson" or "the

---

[1]    The plaintiff's original complaint named Lake Point Hospital as a
defendant, Complaint at 6, but its true name is apparently Lake Pointe Partners, Ltd.,
d/b/a Lake Pointe Medical Center.  *See* Defendant Lake Pointe Partners, Ltd., d/b/a
Lake Pointe Medical Center's Corporate Disclosure Statement, filed July 12, 2004.

[2]    The plaintiff's original complaint named "Carolyn" Myrick as a
defendant.  Complaint at 6.  Her true name, however, is apparently Carol R. Myrick.
*See* Affidavit of Carol R. Myrick, *attached to* Appendix Filed in Support of Defendants'
Motion and Defendants' Brief in Support of Motion as Exhibit H.

plaintiff").  For the reasons given below, the defendants' motion for partial summary

judgment is granted.

Also before the court is the defendants' motion to strike the plaintiff's experts

and brief in support thereof ("motion to strike") and their motion for leave of court

to take the deposition of the plaintiff ("motion for leave").  The defendants' motion

to strike and motion for leave are denied as moot, as the plaintiff's claims against

them are disposed of in the manner and for the reasons stated below.

## I.  BACKGROUND

This is a *pro se* prisoner case, in which Nelson seeks -- pursuant to 42 U.S.C.

§ 1983 ("section 1983") -- monetary damages based on his allegations that the

movants, among other defendants, violated his constitutional rights.  *See generally*

Complaint.  Nelson alleges that officers of various state and municipal law

enforcement agencies used excessive force in effecting his arrest.  Complaint at 7-9.

Nelson further alleges that his constitutional rights were violated when Myrick, a

nurse employed at Lake Pointe, subjected him -- without his consent -- to a urine

extraction by catheter.  *Id.* at 8.  Nelson asserts additional claims against Myrick

based on Texas' law of sexual assault and aggravated sexual assault.  *Id.*, TEX. PEN.

CODE §§ 22.011, 22.021.  Finally, Nelson avers that Lake Pointe failed to properly

train its employees, citing Myrick's alleged actions.  *Id.* at 9.

On August 26, 2005, Lake Pointe and Myrick filed this motion for partial summary judgment on the plaintiff's section 1983 claims based upon an absence of evidence that the movants acted under color of state law.  Defendants Lake Pointe Partners, Ltd., d/b/a Lake Pointe Medical Center and Carol Myrick, R.N.'s Motion for Partial Summary Judgment ("Defendants' Motion").  Nelson responded, on September 19, 2005, reasserting his theory that Myrick acted under the orders of law enforcement personnel when she obtained a urine sample from the plaintiff, without his consent, while he was a patient at Lake Pointe.  *See generally* Plaintiff's Objections and Reply to Said Defendants "Motion for Summary Judgment" ("Plaintiff's Response").  The plaintiff submitted his own affidavit as evidence to support this theory.  Plaintiff's Response at Exhibit F.  The defendants replied on September 29, 2005, that Nelson's response and affidavit fail to raise a genuine issue for trial as to whether the defendants acted under color of state law.  Defendants Lake Pointe Partners, Ltd., d/b/a Lake Pointe Medical Center and Carol Myrick, R.N.'s Objection and Reply to Plaintiff's Objection and Reply to Said Defendants' Motion for Summary Judgment ("Defendants' Reply") at 2.

## II.   ANALYSIS

### A.   Evidentiary Burdens on Summary Judgment

Summary judgment is proper when the pleadings and evidence before the court show that no genuine issue exists as to any material fact and that the moving parties

are entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).[3]  The movants

make such a showing by informing the court of the basis of their motion and by

identifying the portions of the record which reveal there are no genuine material fact

issues.  *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986).  "[T]he substantive

law will identify which facts are material."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The pleadings,

depositions, admissions, and affidavits, if any, must demonstrate that no genuine

issue of material fact exists.  FED. R. CIV. P. 56(c).

Once the movants make this showing, the nonmovant must then direct the

court's attention to evidence in the record sufficient to establish that there is a

genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 323-24.  To carry this

burden, the "opponent must do more than simply show . . . some metaphysical doubt

as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio

Corporation*, 475 U.S. 574, 586 (1986).  Instead, the nonmovant must show that the

evidence is sufficient to support a resolution of the factual issue in his favor.

*Anderson*, 477 U.S. at 249.

---

[3]     The disposition of a case through summary judgment "reinforces the
purpose of the Rules, to achieve the just, speedy, and inexpensive determination of
actions, and, when appropriate, affords a merciful end to litigation that would
otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190,
1197 (5th Cir. 1986).

While all of the evidence must be viewed in a light most favorable to the nonmovant, *id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's summary judgment burden. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (citing *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). Summary judgment in favor of the movants is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

B. <u>Lake Pointe's and Myrick's Grounds for Summary Judgment</u>

To prevail on a claim under section 1983, Nelson must prove "(1) that he has been deprived of a right secured by the Constitution and the laws of the United States, and (2) that the deprivation was caused by a person or persons acting under color of state law." *Bass v. Parkwood Hospital*, 180 F.3d 234, 241 (5th Cir. 1999) (citing *Flagg Brothers v. Brooks*, 436 U.S. 149 (1978)) (internal quotations omitted). The movants argue that "there is no evidence of each essential element of Plaintiff's § 1983 claims." Defendants Lake Pointe Partners, Ltd., d/b/a Lake Pointe Medical Center and Carol Myrick, R.N.'s Brief in Support of Motion for Partial Summary Judgment ("Defendants Brief in Support of Motion") at 6. Specifically, the movants argue that no evidence exists to show that the plaintiff was deprived of his

- 5 -

constitutional rights by a person or persons acting under color of state law, and

therefore, they cannot be liable under section 1983. *Id*. at 6, 9.

As noted, under section 1983, Nelson must show that the defendants acted

under color of state law to deprive him of the rights he asserts were violated. *Bass*,

180 F.3d at 241. In section 1983 actions, "color of state law" is synonymous with

"state action." *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir.

1996) (per curiam), *cert. denied*, 519 U.S. 1081 (1997). Thus, in the instant case, the

alleged wrongful activity is not actionable under section 1983 unless it was taken with

state action. *Id*.

The Supreme Court has outlined various tests to determine if a private party

has become a state actor for purposes of section 1983 liability. See *Lugar v.*

*Edmondson Oil Co., Inc.*, 457 U.S. 922, 938-39 (1982). The Fifth Circuit has

summarized these tests as follows:

> According to the public function test, a private entity acts
> under color of state law when the entity performs a
> function which is "exclusively reserved to the state." *Flagg*
> *Brothers*, 436 U.S. at 157-58, 98 S.Ct. 1729 (internal
> quotations omitted); *Wong v. Stripling*, 881 F.2d 200, 202
> (5th Cir. 1989). The state compulsion (or coercion) test
> holds the state responsible "for a private decision only
> when [the state] has exercised coercive power or has
> provided such significant encouragement, either overt or
> covert, that the choice must in law be deemed to be that of
> the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102
> S.Ct. 2777, 73 L.Ed.2d 534 (1982) (internal quotations
> omitted). Similarly, the nexus or state action test finds
> state action where the state has "so far insinuated itself

- 6 -

> into a position of interdependence with the [private actor]
> that it was a joint participant in the enterprise." *Jackson v.*
> *Metropolitan Edison Co.*, 419 U.S. 345, 357-58, 95 S.Ct.
> 449, 42 L.Ed.2d 477 (1974); see also *Lugar*, 457 U.S. at
> 941-42, 102 S.Ct. 2744 (1982).

*Richard v. Hoechst Celanese Chemical Group, Inc.*, 355 F.3d 345, 352 (5th Cir. 2003),

*cert. denied*, __U.S. __, 125 S.Ct. 46 (2004).

In his complaint, Nelson does not expressly assert that the movants were state

actors. *See generally* Complaint.  However, the complaint, when liberally construed,

gives fair notice of the plaintiff's section 1983 claim against the movants.

Additionally, in prior filings, Nelson alleges that Myrick's actions were fairly

attributable to the state because she "illegally obtained a urine sample from orders of

an officer to check for drugs."  Memorandum Order, filed February 22, 2005, at 6.

Thus, it appears that Nelson is asserting that Myrick was a state actor under the state

compulsion (or coercion) test.  See *Blum*, 457 U.S. at 1004.

As stated above, the state compulsion test applies where the state has exercised

coercive power or provided such significant encouragement that the actions must be

deemed to be those of the state.  *Bass*, 180 F.3d at 242 (citing *Blum*, 457 U.S. 991).

However, the state's "mere acquiesence in private conduct . . . will not transform that

conduct into state action." *Id.* (citing *Flagg Brothers*, 98 S.Ct. at 1737-38).  Courts

have held, in factual situations similar to that presented here, that the actions of

private doctors or nurses were not fairly attributable to the state where the

- 7 -

catherization was ordered, not by a law enforcement officer, but by a physician. *Saulsberry v. Maricopa County*, 151 F. Supp. 2d 1109, 1117-18 (D. Ariz. 2001), *aff'd sub nom.*, *Saulsberry v. Arpaio*, 41 Fed. Appx. 953 (9th Cir. 2002); *Rudy v. Village of Sparta*, 990 F. Supp. 924, 930-31 (W.D. Mich. 1996), *aff'd*, 129 F.3d 1265 (6th Cir. 1997) (table).  Thus, the issue before this court is whether the urine test by catheter was ordered by a private party or by a law enforcement official.

1.  *Movants' Summary Judgment Evidence*

In support of their summary judgment motion, the movants offer evidence that no law enforcement officer ever ordered, directed, or requested anyone at Lake Pointe, including Myrick, to administer a drug test, urinalysis and/or catheterization of the plaintiff.  *See* Defendants' Brief in Support of Motion at 7.  This evidence consists of six affidavits stating that no law enforcement officer ever ordered or spoke about the administration of a drug test, urinalysis, and/or catheterization of the plaintiff.  Affidavit of Bobby Joe Burks ¶¶ 5-6, *attached to* Appendix Filed in Support of Defendants' Motion and Defendants' Brief in Support of Motion ("Defendants' Appendix") as Exhibit C; Affidavit of Brian Lee Earles ¶¶ 7-9, *attached to* Defendants' Appendix as Exhibit D; Affidavit of Eddie Shane Edwards ¶¶ 9-12, *attached to* Defendants' Appendix as Exhibit E; Affidavit of Randal C. Garlington ¶¶ 4-7, *attached to* Defendants' Appendix as Exhibit F ("Garlington Affidavit"); Affidavit of Charles H.

Havens ¶¶ 5-6, *attached to* Defendants' Appendix as Exhibit G; Affidavit of Carol R. Myrick ¶¶ 6-9, *attached to* Defendants' Appendix as Exhibit H ("Myrick Affidavit").

Nelson maintains that Officer Garlington's affidavit is insufficient because it lacks specificity. *See* Plaintiff's Response at 1. Rule 56(e) requires supporting and opposing affidavits to be made on personal knowledge, to set forth such facts as would be admissible in evidence, and to show affirmatively that the affiant is competent to testify to the matters stated therein. FED. R. CIV. P. 56(e). Paragraph 1 of Officer Garlington's affidavit clearly states that he is capable of making the affidavit and is personally acquainted with the facts stated therein. *See* Garlington Affidavit ¶ 1. Further, his statements concerning whether he ordered or spoke with anyone at Lake Pointe about the administration of a drug test, urinalysis, and/or catheterization would be admissible under the Federal Rules of Evidence. Nelson also asserts that Officer Garlington's affidavit fails to specify facts because he uses terms like "I don't recall." Plaintiff's Response at 1. Using this term does not affect the specificity of the information in the affidavits. Rather, it reflects the extent of personal knowledge on which Officer Garlington's affidavit is based. Officer Garlington's affidavit satisfies Rule 56(e) and is competent summary judgment evidence. Therefore, despite the plaintiff's objections, the court will consider Officer Garlington's affidavit.

The plaintiff also argues that Myrick's affidavit is a "sham affidavit" because of a discrepancy between Myrick's affidavit and her testimony at the plaintiff's criminal trial. Plaintiff's Response at 2-3. The plaintiff's allegations focus on Myrick's use of the term "uncooperative." *Id.* During Nelson's criminal trial, Myrick testified that Nelson was "never uncooperative and never combative." *Id.* at 2-3, Exhibit A. According to the movants, this testimony was given as part of a general description of Nelson's demeanor while he was a patient in the emergency room at Lake Pointe. Defendants' Reply at 6-7. Then, in Myrick's affidavit, as part of her explanation as to why she performed an in-and-out catheterization on the plaintiff, Myrick stated, "[d]ue to his bizare and uncooperative behavior, [the plaintiff] did not provide a urine sample." *Id*. at 7; Myrick Affidavit ¶ 7. The defendants assert that the different contexts in which Myrick uses the term "uncooperative" explains any discrepancy. Defendants' Reply at 6-7. They argue that during Myrick's trial testimony, she was attempting to communicate that Nelson was not overtly violent, defiant, or combative in behavior. *Id.* In Myrick's affidavit, by contrast, she was explaining Nelson's failure or inability to follow her instructions to provide a voluntary urine sample. *Id.* The term "uncooperative" may have a different connotation in different contexts. Notwithstanding the plaintiff's assertions, the court construes Myrick's use of the term "uncooperative" to communicate two different ideas that are not in conflict with each other. The court will therefore consider Myrick's affidavit.

Finally, Nelson objects to all other affidavits as being irrelevant. Plaintiff's Response at 3. These affidavits are from four law enforcement officers who witnessed certain events on the night the plaintiff's claims arose and from the state's attorney who prosecuted Nelson at his criminal trial. *See* Defendants' Appendix at Exhibits C, D, E, G, and J. This court finds that these affidavits are relevant and will consider them.

In addition to the aforementioned affidavits, the movants offer documentary evidence, specifically medical records from Lake Pointe, to support their assertion that the treating physician ordered the urine drug screening. Defendants' Appendix at Exhibit I. The medical records show that upon presentation to the emergency department at Lake Pointe, Nelson was crying and was reported to have ingested an unknown substance. *Id*. The medical records show that the plaintiff's treating physician, Dr. Chavira, ordered an EKG, urine drug screening, alcohol level, complete blood count, and a KUB x-ray to determine the cause of the plaintiff's condition. *Id.*

The defendants' summary judgment evidence meets their burden of showing the court a basis for their motion and identifying portions of the record which reveal there are no genuine issues of material fact. See *Celotex*, 477 U.S. at 323.

2. *Nonmovant (Nelson)'s Evidentiary Showing*

Because the movants have made this showing, Nelson must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue

of material fact for trial.  In this case, Nelson's evidence must establish a genuine

issue as to whether a law enforcement officer, not a private actor, ordered or initiated

the catheterization.  To carry this burden, Nelson must show that the evidence is

sufficient to support a resolution of the factual issue in his favor.  See *Anderson*, 477

U.S. at 249.

Nelson alleges, in prior court filings, that Myrick's actions were fairly

attributable to the state because they "illegally obtained a urine sample from orders of

an officer to check for drugs."  Memorandum Order, filed February 22, 2005, at 6.

This is merely an unsubstantiated assertion that will not satisfy Nelson's summary

judgment burden.  See *Calbillo*, 288 F.3d at 725.

Additionally, Nelson argues in his summary judgment response that "what

constitutes the illegality . . . is when an officer continues to restrain a suspect not yet

convicted of a crime, and suggests to a nurse the mode in which to obtain a [urine]

sample."  Plaintiff's Response at 6.  This is also an unsubstantiated assertion that will

not satisfy Nelson's summary judgment burden.  See *Calbillo*, 288 F.3d at 725.

Nelson offers his own affidavit to satisfy his summary judgment burden.  In

this affidavit, Nelson states:

> "I remained cuffed to the bed my entire visit.  Nurse Carol
> Myrick needed a urine sample but officer Garlington
> refused to let me up.  I do recall Garlington and Myrick
> speak with one another discussing how to obtain the
> Plaintiff, Steve Nelson['s], specimen.  I witnessed Carol
> Myrick introduce the lab data containing the results of the

> Plaintiff[']s drug screen.  I also witness Myrick tell a jury
> that Steve Nelson was never uncooperative nor combative."

Affidavit of Steven Ray Nelson, *attached to* Plantiff's Response as Exhibit F.

This affidavit shows, at most, that Myrick and Officer Garlington spoke to each other about how a urine sample from the plaintiff could be obtained.  It does not demonstrate that Officer Garlington ordered the catheterization.  Rather, Nelson merely states that he "recall[s] Garlington and Myrick speak [sic] with one another discussing [sic] how to obtain the Plaintiff[']s] . . . specimen."  Considered in the light most favorable to Nelson, this affidavit might arguably suggest some metaphysical doubt as to whether Officer Garlington ordered the urine extraction by catheter, but this is an insufficient showing to withstand a motion for summary judgment.  See *Matsushita*, 475 U.S. at 586.

The court concludes that Nelson has failed to show, as he would have the burden at trial to do, that Myrick and Lake Pointe are state actors and were therefore acting under color of state law in catheterizing the plaintiff.  The summary judgment evidence shows that a physician ordered the urine drug screening, and Myrick's decision to obtain a urine sample via catheter was made pursuant to Lake Pointe protocol.  *See* Defendants' Appendix at Exhibits H, I.  The evidence construed most favorably to Nelson simply indicates that Officer Garlington spoke to Myrick about how to obtain the urine sample which had already been ordered by Dr. Chavira.  See *Id.*; Plaintiff's Response at Exhibit F.  This discussion between Officer Garlington and

- 13 -

Myrick is not sufficient to establish that Lake Pointe and Myrick are state actors.  See
*Blum,* 457 U.S. at 1004-05.

### III.  CONCLUSION

For the reasons given above, Myrick and Lake Pointe's motion for partial
summary judgment is **GRANTED**.  It is therefore **ORDERED** that the plaintiff's
claims against these defendants under 42 U.S.C. § 1983 are **DISMISSED** with
prejudice.

This court will decline, pursuant to 28 U.S.C. § 1367(c)(3), to exercise its
jurisdiction over the plaintiff's remaining state law claims against the defendants
Myrick and Lake Pointe.  Thus, it is further **ORDERED** that the plaintiff's remaining
state law claims against these defendants are **DISMISSED** without prejudice.  The
plaintiff may refile these state law claims, if he chooses to do so, in a Texas state
court.

It is further **ORDERED** that the defendants' motion to strike plaintiff's
experts and brief in support thereof is **DENIED** as moot.

It is further **ORDERED** that the defendants' motion for leave of court to take
the deposition of plaintiff is **DENIED** as moot.

October 25, 2005.

A. JOE FISH
CHIEF JUDGE